Clerk, please call the next case. Case number two, 0404, Daniel Olson v. the Jackson Community. Good morning, Your Honors. I'm Tom Colvin. I'm a police reporter at the Frame Press on behalf of the plaintiff, Daniel Olson, in this matter. We had oral arguments at the Circuit Court in Rock Island about a year ago when Judge Conway said this is a troublesome case. He said it's very understandably a case the plaintiff would take this far. Of course, taking it this far means we're dealing with the manifest way to the evidence standard here. We're dealing with which doctor should have his or her opinion adopted. That's the age-old battle in these cases, isn't it? It's the age-old battle. I've once heard Arbitrator Carlson standing outside of his hearing room and saying this case is about one doctor says one thing and the other doctor says something else, like every case. Not unusual. Not unusual. So how do you get over the hurdle of the opposite conclusion is clearly apparent when you have a battle of the experts? Well, we do so when we see the dissenting opinion in the commission decision that says that this result is unfathomable. Commissioner DeBrent used that word. Well, to the majority of the commissioners, it was an unfathomable one. It's true. It's true. But my take on that was that he was signaling that there's something here. There's something here to be examined. We've got a claimant who suffers from bilateral carpal tunnel, and his employment involves sanding, cleaning, priming, and painting enormous pieces of machinery. On the way to oral arguments in front of Commissioner DeBrent, Commissioner Luskin, and Commissioner White, I drove down I-55, and perhaps it was the universe calling out to me, but I passed four or five of these pieces of machinery. They're enormous. They're 8 feet tall. And the claimant testified that his job required him to sand down these pieces of machinery by hand. Well, that brings up part of the problem, because if you characterize this as a battle of the experts, the doctor that testified in favor of the claimant was this Dr. Van Gilleren. Is that right? Yes, sir. The commission, the arbitrator, found that Dr. Van Gilleren did not have an adequate understanding of the claimant's actual job activities because he merely indicated in his letter, in support of his opinion, that the claimant was doing painting with a constant, tight, repetitive gripping. Well, that isn't really accurate then, particularly in light of what you're saying. In contrast, Degnan, who testified against the claimant, said the job as a painter also required him, at times, to use a sander and air sprayer. So he's not constantly gripping with a repetitive motion. If you're spraying, you're not gripping a brush, are you? He's gripping that instrument in order to do the painting. The sanding, I would say, and I think you would agree, is where the forceful, the real forcefulness comes about. He is using his hands all day long. And he testified in the record that it takes eight hours to sand down one of these pieces of machinery. I guess my point is, in some of these cases, as you know, it's truly just a battle of the experts. But in this case, the Commission was able to delineate why they felt that Degnan's testimony was superior to Van Gieleren's. It's true. You look at Dr. Degnan's report, though, and I think it's worth stating, and I stated this to the Commission, this is a report that's drafted on Letterhead, on John Deere Letterhead. She's an employee of John Deere. And again, Commissioner DeBrent's dissent, he noted there's sort of an inherent bias there. The employee of the Respondent is rendering the opinion on whether or not it's a dissent. Isn't there an inherent bias? We've all hired experts. I think that there's a level of independence that you get if it's a doctor, a physician that is outside of, is not on the payroll of the Respondent. Justice Dunn, in a dissent in a case called Sears v. Rutenhauser, which became the Supreme Court's decision, said, the handling of an expert witness can be summed up in the adage of the old sage, whose bread I eat is whose song I sing. Just that simple. So when you turn around and say there's an inherent bias in one expert, there's an inherent bias in all experts. Perhaps that's correct. And I try to draw the analogy and oral arguments to the Commission. It's as though, what if the claimant himself was a physician? He said, I think it's related. What value would they place in that opinion if the claimant were a physician? If he's a physician and he is competent to render the opinion, the opinion is the opinion. Now, whether the triartic buys it, that's another issue. Okay. Well, what about the bases? What about the bases supporting the opinion? Is it Dr. Degnan? Dr. Degnan. Dr. Degnan indicated that the U.S. Labor Department's statistics or studies show that in order to be defined as repetitive work, it has to be the same activity performed more than 50% of the day. And Dr. Degnan said that the claimant's activity is here. below that criteria for repetitive work because he used both hands for the painting job. And therefore, by definition, it would have been less than 50% for each hand during the course of the day. Did the facts support that conclusion? When I read his testimony, I say that he's sanding for eight hours. He has to sand one piece of machinery for eight hours. Whether he's using one hand or the other, that's a repetitive use all day long. And I understand the argument that, well, if he gets to switch hands, it falls beneath that threshold of 50% of the day. Is that what the ñ have you looked at the criteria of the Labor Department to see whether Dr. Degnan appropriately applied that criteria here? I have not. I mean, it seems to be a big part of Dr. Degnan's opinion here, the bases for the opinion. You know, there's another basis for Dr. Degnan's opinion, and that's the World Health Organization report that obesity and age are factors. And in this instance, he's got a BMI of 30, so he's not above the threshold there. He's 56 years old, so he's older than 40, so he carries a higher risk of carpal tunnel. Well, that's actually ñ it's gratifying, isn't it, that somebody was trying to apply some objective standards here? Many times the argument is going to be that, hey, you say this is a biased expert. It's all subjective. In here, he apparently tried to bring in some objective criteria, correct? Correct. He also said ñ she also says that this is a multifactorial thing. And again, the repetitive use can be a factor, which leads us back to what is the standard? What does the claimant have to prove to show that this is a work-related condition? And I think we know it's the preponderance of the evidence, right? We have to show 50.1 percent. We've carried our burden. We've met our burden that the condition is related. If it is, I read the case law to say a causative factor. The Mendota Township case, cited in my brief, states that a causative factor. A non-employment-related factor, which is attributing cause to the compensable injury, will not be a break in the causation. So if he's got these other factors, but there's repetitive use as well, my reading of this is that the Commission's ignoring the standard for what's a work-related repetitive trauma injury. And, you know, there's rumbling down our community. Counsel, let me just interrupt you. It seems like you've got a real uphill battle if Dr. Dignan's opinions were appropriately considered, if Dr. Dignan's opinions were supported by the evidence. In other words, the bases were not flawed. You've got Dr. Dignan saying one thing and then Dr. Van Gilleren saying another thing. You've got competing experts, and it's that classic battle of the experts. If Dr. Dignan's opinions were flawed because they were based on her misunderstanding of certain things, which could be the U.S. Labor Department definition of repetitive activity, could be in regards to the claimant's activities, then you may have something. But so far I'm not hearing that. Did Dr. Van Gilleren testify in any way critical of the bases that Dr. Dignan used to support her opinion? Dr. Van Gilleren's opinions were that this claimant did repetitive work, and that is a causative factor in the development of carpal tunnel syndrome. But Dr. Dignan said that repetitive activity, studies that she looked at, found that repetitive activity is not correlated with the development of carpal tunnel syndrome, which kind of applies in the face of what folks that looked at carpal tunnel would assume here. So did Dr. Van Gilleren, did he dispute that? His opinions are, there's a one-page narrative report, and those are the opinions on which we rest. And his opinions are that the condition is related. He did not specifically attack Dr. Dignan's opinions. Isn't that really kind of the problem? Because we're moving into this carpal tunnel repetitive trauma. We've had cases involving people working in a mushroom factory, okay, where now the multifactorial test, which is being presented in defense of an employer, is even pregnancy. Okay? And all of these factors. So it does seem that the days have gone by where a contract expert can just simply say, in my opinion, repetitive activity causes this, if you understand what I'm saying. I do. The employer's experts seem to be creating a basis for their expert opinion, which is not being challenged by the opposing expert. And if that's the case, why is it against manifest way of the evidence for the commission to go with the more detailed, unchallenged basis? I'll circle back on Commissioner DeBrun's dissent. To find that carpal tunnel can't be aggravated, accelerated, of the reason that it develops when the person is sanding eight hours a day is unfathomable. And that's ‑‑ You have two experts. Yes, sir. That rendered exactly opposite opinions. You've got Van Gelman, who says that it's within a reasonable degree of medical certainty that it was caused or aggravated by his work activities. And he gave a reason for it. He says that because he had to do painting with constant, tight, repetitive gripping. You get Dr. Dignan, who says that within a reasonable degree of medical certainty, his bilateral carpal tunnel was not caused by his work activities. Why? Because the activities as a painter fell below the defined criteria for repetitive work. So you've got two experts. They both give opinions. And the commission says we believe Dignan and not Van Gelman. So what are we supposed to do with that? We're supposed to adopt a dissent. That's your answer. No, but why? I mean, you know, how do we do that if we're stuck with the presumption that it's a manifest weight standard? I believe the manifest weight standard applies here. I think you're agreeing with me. I do not believe that Dr. Dignan's characterization of the work activities being not repetitive matched the testimony of the job performed. And for that reason, I believe that Dr. Van Gelman's opinion that that is repetitive, that is tight gripping, that is a causative factor, should have been adopted by the commission. And I pray that you will find that that is the conclusion that is clear to you in opposition to what they did. Thank you. Thank you, Counsel. You'll have time in reply. Counsel, you may respond. May I please report, Mr. Press? I'm here on behalf of John Deere in this case. And you are who? Did you announce your name for the record? Oh, I'm sorry, Steve Nelson. I apologize. I think it boils down to the disputing experts and the reliability of the report of Dr. Van Gelman. The report was one page. It basically states that it was a report that he had just been receiving bioavailability NCV studies on August 13th of 2013. That's not correct. As reported in the case, I recommended bilateral carpal tunnel surgery. He had already performed those two surgeries. He talks about tight gripping and pain, but the petitioner's job was different than described by Dr. Van Gelman. And the commission pointed this out as one of the reasons why they adopted Dignan over Van Gelman was because they felt that he had misinterpreted or didn't understand some of the conditions of the job, right? So they gave reasons why they adopted one over the other. Correct. Okay. And the issue of bias or unfathomable that was addressed by one of the commissioners on review, the circuit court in its documentary basically stated that. Counsel, we don't review the circuit court's decision. We only review the commission's decision. The circuit court is rather irrelevant. I understand, but the circuit court in their documentary said they addressed the issue of bias in an interpretation of pending evidence and they did not feel it was against the manifest way of the evidence. So we believe that based upon the case law, that this case should be affirmed by the court as it relates to the conflicting medical evidence. Thank you. Thank you, Counselor. Counselor, you may respond after you have five minutes. In reply, I mean, I fear I'll just be restating my position on this, that I understand the standard of review and that we have competing medical experts. I would just perhaps add that it appears as though they're trying to add another layer of what a claimant has to prove on something like this and show that the work activities are perhaps more than 50% of the costs. As we sit here today, causation hasn't been changed by the legislature. We still have to prove that it was but one factor, and we feel that the claimant in this matter has met his burden of proving work-related incidents, not its repetitive uses. Counselor, I think it's an example or an illustration of what is necessary in order to combat an opposing expert like this. Your expert is going to have to address head-on some of these studies that distance repetitive activity from a carpal tunnel diagnosis because it seems clear that the Commission found Dr. Dicken to be persuasive and the bases supporting her opinion to be persuasive. And it doesn't sound like Dr. Van Yolen was up to the task or requested to refute those bases. Thank you, Your Honor. Thank you, counsel, both for your arguments in this matter. If you take their advisement, the written disposition will issue.